Thompson, Ch. J.,
delivered the opinion pf-tfae court. If the, right of the plaintiff below to maintain this action depended Upon the abstract' question* .as to the right of property, Tam satisfied hjS must fail'.' It is, necessarily to be inferred, from the bill of exceptions, that the property in the horse was, at the time he was taken, by the enemy, duly vested in the United States. And' it is very clear that it was not devested by .any thing,,that took place at the time he was taken by the Indian. It ¡s a proposition hot to be .controverted, that, no right could arise from the recapture, unless the property had. vested in the captors.. Whatévér difference of opinion there may have., been among the writers on public law, as to the time when, or what is necessary to ...take, place, in order to. vest the, property in the captors, no approved ju^f has gone so far as to maintain, that, a mere capture is- sufficr'int for that purpose. It has been, generally held, that the property must be carried inira prcesidia, <br remain twenty-four, hours in "the hands of the captors, or, that the spes t recuperandi must be gone, or that an actual condemnation must take place; But in the case before us, there could hardly be sáid even to have been a capture. • In Goss v. Withers., (2 Burr, 693.,). Lord Mdnsjield observed*.thatnothing could be said tobe. . taken until the battle was over; and this is,not until all immediate, pursuit has ceased, an d all hope of recovery is gone. That was- not the Case here. ' The interval between the capture and recapture, must have beqn very short, and during the continuance of the, battle. The property in the horse could never,, under- such circumstances, be considered as vested i;n the captors* If so, the- recapture could not vest it in the plaintiff.
But admitting the right of property had vested in the captors, the better opinion is, that, Upon the recapture, it would have belonged to t.he United States.' The rule laid down by Vattel (b. 3. ch. 9. s. 164.) is the rational one* He says, as the towns and lands taken from the enemy aré called conquests, so all. moveable things constitute the booty, and this, booty* naturally, belongs to the sovereign making, war* no less than the conquests;; *283 for he alone has such claims against the enemy as to warrant him to seize* on his goods, and appropriate them to himself. His soldiers are only instruments in his hands, and whatever they do is in his name, and for him, and he may grant them what share he pleases. Lord Mansfield, in Le Caux v. Eden, (Doug, 614. n.,) said, that as to plunder or booty in a mere land war, without the intervention of ships, or their Crews, it never had been important enough to give rise to any question about it. It is often given to the soldiers upon the spot, or wrongfully taken by them, contrary to military discipline; and, if there be any dispute, it is regulated by the commander-in-chief. He asserts, that there is no instance in history or law, ancient or modern, of any question, before any legal judicature, ever having existed about it in England; and he goes on to observe; that it does not come within the prize jurisdiction.
I have thought proper thus briefly to notice the general question, as to the right of property, as it was gone into, very much at length, upon the argument, though it is unimportant as to the decision of the present case; for, admitting the plaintiff was not the owner of the horse, the defendant had no right to take him out of his possession. He, certainly, was not the owner; and if the horse belonged to the United Slates, the defendant showed no competent authority to take him from the plaintiff. The defendant, it is stated, was an officer of the United States army, acting under the orders of an officer commanding a detachment of United Stales troops. Who this officer was, his rank or standing, does not appear. It is not pretended or intimated that he belonged to the quarter master’s department, to which the care and charge of the public property more properly belong. But the mere fact of his being an officer, commanding a detachment of troops-, could not vest him with the power of taking the property belonging to the United States wherever it might be found. It does not even appear that this officer had any command or part in the battle at the time the property was taken. Had any question at that time arisen about it, perhaps the commanding officer, upon that occasion, would have been justifiable in taking possession of the horse in behalf of the United States. But the plaintiff had had the peacea'ble possession of the horse for five or six months; and the interference of the defendant was the act of a mere stranger. He showed no authority from the owner; nor does it appear that the conduct *284 of the defendant-has ever been ratified or sanctioned by the United States, or that the horse has ever come into.their posses-. sioni What has become of him has not been shown. It is true the defendant professed to act in behalf of the United States, but,from any thing that appears, this was a mero, pretext,, anti the property was appropriated to his own private use. if this horse belonged to' the United Stales, a.s booty or otherwise, who’ cart sáy, ór has a Eight to say, according to the doctrine of- Vattel, -that the sovereign shall not give him to the soldier who took him,- for his gallant conduct on that occasion.? This was a matter resting, in the. discretion of the- government, with whom .it belonged to inquire after, and reward merit; and until the con-> trary be shown, the fair presumption.,, under, the circumstances of the case, is, that the government never intended to. interpose any claim to'- this, horse. In an, action of trespass, dé ñoñis aspar* tat is ^ it is not competent for the defendant to show property in -a stranger to excuse the trespass and justify t'he, taking. If ,a person has the peaceable possession of a chattel, this gives him a right, as. against every body but the rightful owner.: In an action of trover the defendant may show title’ in a third person.-(11 Johns. Rep. 529.) ' But it is’.expressly-laid,dbwn by this courts in Derrick v. Chapman, (11 Johns. Rep. 132.,) that the possession of a chattel Is prirna facie evidence of right, and that a mere.stranger could not deprive the- party of that possession, without showing some authority,, or right derived from the owner, to justify the taking. The judgment of the court below must> therefore, be reversed1.
Judgment of reversal.