25   321
66   344

## PARKER ET AL. *VS.* HOTCHKISS.

Where the declaration in an action of trespass or trespass on the case for an injury to land, alleges that the plaintiff was well seized and possessed of the land, as a good indefeasible estate in fee simple, it is sufficient on the trial for the plaintiff to show a lawful possession at the time when the injury complained of was committed.

And a judgment for the plaintiff in such a case, upon the plea of the general issue, is conclusive evidence between the parties and their privies, only of such title as the plaintiff was bound to prove.

Therefore where, in an action on the case involving the question of the plaintiff's right to the uninterrupted flow of a stream to his mill, as against a riparian proprietor above, who was charged with obstructing the same, the plaintiff offered in evidence a judgment in favor of a party from whom he derived title, against a party from whom the defendant derived title, in an action brought to recover damages for a like obstruction, together with parol testimony that the suit was brought for the purpose of establishing the same right now claimed by the plaintiff; and it appeared that the declaration in the former suit, alleged that the plaintiff in that suit owned and possessed said mill with its appurtenances, and that he and those under whom he claimed, had for more than thirty-eight years enjoyed the uninterrupted use of the water of the river, flowing in its natural course and quantity, through and from the close in the possession of the defendant to said mill, and that the defendant did wrongfully erect and continue a certain dam across said stream within his said close, and thereby obstruct the passage of the water to said mill; and it also appeared that the only plea in said case was that of the general issue; said judgment being offered in evidence by the plaintiff as conclusive proof of the existence at the time, in the plaintiff therein, of the prescriptive title alleged in said declaration; it was held, that it was not necessary to the recovery in said suit that the plaintiff should have proved any other than a possessory title, and that consequently such judgment was not conclusive evidence of the title alleged in the declaration on which it was founded.

Where a riparian proprietor has used a water privilege for more than fifteen years, but in such a manner as to do other riparian proprietors no injury and give them no right to interfere, the proprietor so using the same acquires thereby no rights against such other proprietors.

A proprietor of land through which a stream flows, has a right to detain the water for his reasonable use, for mechanical and other purposes; and the question of reasonable use is one for the jury.

And where, in submitting the question of reasonable use in such a case to the jury, the court had instructed them, that they were not to look alone at what would be a reasonable use at one mill, if there were no others on the stream, but that they were to take into consideration the wants of the other mills, and from all the circumstances say whether the use in the particular instance was reasonable; it was held, that the question was properly submitted.

THIS was an action on the case, for obstructing the waters of West river in New Haven, by means of which they were prevented from flowing to the plaintiff's paper mill, as they had been accustomed to flow.

Upon the trial of this case before the superior court at New Haven, at the March term 1856, it appeared that the plaintiffs and defendant were owners and occupiers respectively of mill seats on West river. The plaintiffs claimed that their privilege was an ancient one, entitling them to the uninterrupted flow of the stream.

In support of their claim they offered in evidence the records of two suits in favor of William Buddington and Samuel S. and William Wood, and William and Edward E. Buddington, from whom the plaintiffs derived their title, against William Bradley, from whom the defendant derived his title, and the testimony of William Buddington that those suits were brought for the purpose of establishing the right pertaining to the factory privileges, as claimed by the plaintiffs, to the free and uninterrupted flow of the stream for the use of the plaintiff's mill.

In the former suit the declaration alledged that from the first day of August to the 4th day of September 1832, they owned and possessed a certain mill seat and water mill, with the appurtenances situated near West river, and that they, and those whose estate they had in the premises, had, for more than thirty-eight years, the free and uninterrupted use of the water of the river flowing in its natural course and quantity, through and from the close in the possession of the defendant, higher up the stream, to an ancient dam and race-way, appurtenant to said mill seat and water mill, and thence through said race-way to said mill for the purpose of working the same, and that the defendant did erect and wrongfully continue a certain dam across said river, on the close of the defendant, so as to obstruct the passage of the water to the plaintiff's mill.

The cause came on for trial, upon the general issue, before the superior court at New Haven, at the October term 1833, when the plaintiffs obtained a verdict for one dollar dama-

ges. The defendant filed a motion for a new trial, which was denied by the supreme court of errors, and the case is reported in 10 Conn. R., 213. (*Buddington* v. *Bradley.*)

The other case was similar, for an injury committed by the defendant between April 1st and May 3d, 1833. It was defaulted and the damages assessed at six cents.

The plaintiffs claimed and prayed the court to instruct the jury, that they and those under whom they claimed, in addition to the common right of riparian proprietors, had acquired a prescriptive right, by an use of more than fifteen years to the free and uninterrupted flow of the water of the stream, through and from the premises now owned by the defendant, to the premises of the plaintiffs, to be used at their pleasure, without obstruction; and that the aforesaid records, furnished conclusive evidence of the prescriptive right claimed by the plaintiffs, as existing at the time of the injuries complained of in those suits.

But the court informed the jury, that, in its opinion, the question of a prescriptive right, such as was claimed by the plaintiffs, was not necessarily involved or established in those cases. But that it was proper for them to take them into consideration, in connection with the other evidence, showing the use of the stream and tending to establish a prescriptive right, and that, if from the whole evidence they were satisfied that the plaintiffs had used the water of the river at their mill, for more than fifteen years, during the dry season, without interruption, then they must find a prescriptive right commensurate with such use, and if the defendant had invaded that right, their verdict must be for the plaintiffs. And the court further instructed the jury that the plaintiffs, as riparian proprietors, had a right to have the water flow to their land in its accustomed manner, subject only to such obstruction as might be legally exercised by other riparian proprietors, whose lands were situated above those of the plaintiffs : that they were not in this character, entitled to the exclusive control of the water of the whole stream, so as to prevent its use in any manner, and for any purpose, by other

owners above them.    That every riparian proprietor has an
equal right to erect on his own land, hydraulic works, and to
use the water in a reasonable manner for culinary, agricultural
and mechanical purposes, if he return the water to the
stream again, to flow in its accustomed course to the proprie-
tors below.    In doing this there may, and indeed must be,
some change in the accustomed flow of the water, for if
there be an obstruction placed in a river, and a small quan-
tity of water be diverted to the kitchen or meadow of the ad-
joining proprietor, it is evident the stream will not flow
precisely as it would have done without the obstruction.
But no riparian proprietor has a right to use the water of
a stream to the prejudice of other proprietors below him,
unless he has acquired a prior right entitling him to such ex-
clusive enjoyment.    He may use the water for the purposes
mentioned, while it runs over his land, but he must not un-
reasonably detain it, nor permit it to pass from his land in
such unusual quantities as materially exceed the regular
and natural flow of the stream.

That the question of reasonable use was one for the jury,
and in disposing of it they were not to look alone at what
would be a reasonable use at one mill if there were no others
on the stream, but to take into consideration the wants of the
other mills, and from all the circumstances say whether the
use in the particular instance was reasonable.

That the question in this part of the case was this :—Has
the defendant during the time stated in the declaration, used
the water of the stream at his mill in a reasonable manner, and
for a proper purpose, or has he detained it longer than was
necessary for a reasonable use, or has he let it off in such
quantities as materially to affect its accustomed flow to the
plaintiff's mill.

The jury having returned a verdict in favor of the defend-
ant, the plaintiffs moved for a new trial, and the questions
arising on the motion, were reserved for the advice of this
*court.*

*Baldwin* and *Beach*, in support of the motion.

The parties in the present suit, each deriving their title respectively from the parties in the former suits, are as to the matters which were in issue therein, concluded by the judgments then rendered. *Canaan* v. *Greenwood Turnpike*, 1 Conn., 1. *Betts* v. *Starr*, 5 Conn., 550. *Denison* v. *Hyde*, 6 Conn., 508. *Pomeroy* v. *Barnes*, 17 Conn., 420. *Bell* v *Raymond*, 18 Conn., 91.

We suppose however that the controversy between us will be, not as to the rule, but as to its application, i. e., whether the prescriptive right to the water was a matter in issue in those former suits.

I. The records were introduced in evidence in connection with proof by the testimony of Buddington, (and there was no contradictory evidence,) " that said suits were brought for the establishment of the right pertaining to the factory premises, as was claimed by the plaintiffs, to the free and unobstructed flow of said stream thereto for the use of their mill, the actual damage occasioned by the interruption at the time of the bringing of said suits being inconsiderable."

II. The damages assessed by the jury being nominal, indicate that they regarded their verdict as settling a right, and not as a compensation to the plaintiffs for actual damages caused by an unreasonable use of the water.

III. But irrespective of the accompanying evidence, and of the amount recovered, the record itself clearly shows what matters were in issue, and what were decided in those suits. That record consists of the writ, showing what rights the plaintiffs claimed ; of the motion, showing what rights they claimed to have proved, and also showing what the Judge instructed the jury they must find proved, to entitle the plaintiffs to a verdict ; and of the verdict itself, and the judgment of the court thereon.

1. The writ sets out that the plaintiffs own and possess a mill seat on West river, and that " they and those whose estate they have in the premises, have had for more than thirty-eight years the free and uninterrupted use of the water of said river, flowing in its natural course and quantity"

from the defendant's premises " to an ancient dam and race-way appurtenant to said mill-seat and water mill;" alleging "that they were entitled, and still of right ought to have and enjoy the same in manner aforesaid, free and unobstructed."

2. In the motion allowed, the court found that " the plaintiffs claimed to have proved that they, and those under whom they claimed, had, for more than a century, enjoyed the free and uninterrupted use of the water of West river in its natural course and quantity, through the lands now occupied by the defendant, to the lands of the plaintiffs, and thence by means of an ancient dam across said river through a race-way, to an ancient mill, to move the machinery thereof; and they and those under whom they claimed had used and enjoyed the water of said river as their convenience required, and during the dry seasons of the year had been accustomed to turn the whole of the water of said stream through the race-way for the use of said water mill, without interruption or molestation."

3. The court charged the jury " that if they found that the plaintiffs and those under whom they claimed, had for more than fifteen years prior to the obstruction raised by the defendant and those under whom he claimed, had the free and uninterrupted flow of the water of said stream, to use at their own free will and pleasure, without hindrance or disturbance," they must find their verdict for the plaintiffs.

4. The verdict and judgment were for the plaintiffs to recover one dollar damages.

IV. It is apparent, therefore, from the record that the question whether the plaintiffs in those suits had a prescriptive right to the uninterrupted use of the water, was not only in issue, but it was, aside from the question of injury by the acts of the defendant, the only point in issue. *Strutt* v. *Bovingdon*, 5 Esp., 56.

V. The reasons which influenced the supreme court to refuse a new trial in the case, are no part of the record.

We claim further that there was error in the charge to the

jury that if no prescriptive right was proved, the defendant was entitled, as riparian proprietor, to detain the water, for his reasonable use for mechanical purposes, by means of hydraulic works erected on his own land; and that the question of reasonable use was to be determined by the jury, not by what would be reasonable if there were no other mill on the stream, but by considering the wants of other mills and all the circumstances. The plaintiffs insist that their rights as riparian proprietors to the flow of the stream in its natural course and quantity being a right annexed by law to the ownership of their land, does not depend for its extent on their wants or their use, and that neither the rights of the plaintiffs nor the defendant can be restricted or enlarged thereby. Angell on Water Courses, Secs. 94, 95, 96. 12 M. & W., 324.

*R. I.* and *C. R. Ingersoll*, contra.

1. The question whether the plaintiffs had a prescriptive right to the use of the water, in addition to their rights as riparian proprietors, was submitted to the jury as a question of fact, and found against them. But they claim that the superior court erred in not instructing the jury, that the case of *Budington* v. *Bradley*, was conclusive in establishing in the plaintiffs the prescriptive right contended for.

It is quite manifest, however, that this case does not establish any such prescriptive right.

The supreme court put the case on the original rights of the riparian proprietor, to have the accustomed and natural flow, and not on any acquired right to have the water in a particular manner. See remarks of Williams J., 10 Conn., 218.

2. The jury having, in the case on trial, found the question of prescriptive right against the plaintiffs, they can stand only upon their rights as riparian proprietors. As such, they have the right to have the flow of the water in its natural and accustomed manner. But that right is not inconsistent with the right of the other riparian proprietors to the reasonable use of the water as it flows through their own land. These

other riparian proprietors, can not, however, divert it or unreasonably detain it. The right to use necessarily implies the right to dam, and to detain the water long enough to use it reasonably and advantageously, carefully returning it, after such use, to the bed of the stream, before leaving their premises, to let it flow on in its natural course and quantity, to the other riparian proprietors, for the like use by them.

The law on this subject is well brought together in the case of *Embury* v. *Owens*, 4 Eng. Law and Eq., 476. The court say—

" The law as to flowing water is now put on its right footing by a series of cases and is fully settled in the American courts. See 3d Kent Com., 439–445. This right to the benefit and advantage of the water flowing past his land is not an absolute, an exclusive right to the flow of all the water in its natural state ; if it were, the argument that every obstruction of it would give cause of action would be irrefragable; but it is a right only to the flow of the water and the enjoyment of it, subject to the similar rights of all the proprietors of the banks on each side, to the reasonable enjoyment of the same gift of Providence. It is only therefore, for an unreasonable and unauthorized use of this common benefit that an action will lie, &c." *Platt* v. *Johnson*, 15 John., 212. *Wadsworth* v. *Tillotson*, 15 Conn., 376.

See as to the right to use running water generally. *Dickinson* v. *Grand Junction Canal Company*, 9 Eng. Law & Eq., 513. *Hartzall* v. *Sill*, 12 Penn. State Rep., 248. *Van Hoesen* v. *Coventry and Mandeville*, 10 Barbour, 518. *Cary* v. *Daniels*, 8 Met., 466. *Pitts and others* v. *Lancaster Mills*, 13 Met., 156. *Hetrich* v. *Deachler*, 6 Barr., 32. See also the very recent case, *Thurber* v. *Martin*, 2 Gray, 394, where Chief Justice Shaw sums up the whole doctrine thus :—

" Every man has a right to the reasonable use and enjoyment of a current of running water, as it flows through or along his land, for mill purposes, having a due regard to the like reasonable use of the stream by all other proprietors above and below him."

3. Whatever may have been the rights of the plaintiffs, in regard to flowing water, original or derivative, the jury having found that the defendants, being riparian proprietors, have only used the water reasonably, there can be no re- covery.  *Twiss* v. *Baldwin*, 9 Conn., 291, 308.

WAITE, C. J.  In the two suits, the records of which were read in evidence, the plaintiffs were under no obligation to prove their title to the extent alledged, in order to entitle them to the verdict which they recovered.  It was sufficient for them to prove so much of it, as would enable them to sustain their action, had no more been alleged.

Thus a person, who has the lawful possession of lands, may maintain an action for trespass committed upon them, and in his declaration need not set out more than his posses- sory title.  But if he goes further, and alledges that he was well seized and possessed of those lands, as a good indefeasi- ble estate in fee simple, and on the trial fails to establish such a title, still he may recover upon proof of a lawful pos- session during the period in which the injury complained of was committed.  And if the case were tried upon the general issue, the record of it, in a subsequent case between the same parties, would prove nothing more than the plaintiff was bound to prove to entitle him to the verdict which he obtained.

So in the case of *Buddington* v. *Bradley*, it was suffi- cient for the plaintiffs, on the trial of their case, to prove a lawful possession of their mill and water privileges, during the time when the injury complained of was committed, but it was not necessary for them to prove that they and those under whom they claimed, had had such possession for a period of thirty-eight years previous thereto, and therefore the record does not establish the plaintiffs' title during such anterior period, nor indeed any fact which it was not neces- sary for the plaintiffs to have proved, in order to entitle them to their verdict.

The court below was therefore right in saying to the jury

that those records did not prove a title in the plaintiffs to the extent they claimed.

It was further insisted by the plaintiffs that they had gained a title as against the defendant, by the use of their mill and their water privilege for a period of more than fifteen years. It is difficult to see upon what ground this claim can be maintained, so long as the plaintiffs, in the use of their mill and water privilege, did not invade any rights of the defendant.

If indeed the plaintiffs, by means of their dam, had thrown the water back upon the defendant's land, and had continued to do so for a period of more than fifteen years, without objection on his part, the law would presume a grant to the plaintiffs of the right to flow the defendant's land, because it is not to be supposed that he would have suffered such a continued injury to his land without objection, unless the plaintiffs had acquired the right.

But if the plaintiffs have done nothing more than merely to use their own property, and in such a manner as to do the defendant no injury, and give him no right to interfere with their use of their property, it is difficult to see how, by such an use, they can acquire a title as against the defendant.

What would be the effect of a title acquired by prescription, strictly so called, that is by an user extending so far back, as, in the language of the books, " the memory of man runneth not to the contrary," we need not enquire, because no such title was claimed in the court below.

Indeed the charge of the court upon the claim of the plaintiffs, as it was made, was in their favor, and therefore they have in this part of the case no cause for complaint, and the question need not further be considered.

It is finally claimed that the charge given to the jury was wrong, inasmuch as they were told that the defendant as riparian proprietor, had a right to detain the water for his reasonable use, for mechanical purposes, by means of hydraulic works, erected upon his own land, and that the question of reasonable use was one for the jury.

It is said this gives no definite rule, by which the rights of

the parties may be determined, but the question is left to the varying opinions of jurors.    The same objection might be urged in other cases where questions respecting reasonable care, reasonable diligence, and reasonable notice, arise, and are left to the jury.

But in our opinion the case was properly submitted.    The plaintiffs, as lower riparian proprietors, were not entitled to the exclusive control of the whole stream.    They have no right to say to the proprietors above, you shall not have the use of the waters of the stream, while passing over your lands, if you in any manner obstruct the natural flow of the stream. The latter have rights as well as the former, and are equally entitled to the privilege of erecting mills and hydraulic works upon their own lands, and using the waters of the stream for operating them to a reasonable extent.

We do not advise a new trial.

In this opinion, the other judges, STORRS and HINMAN, concurred.

New trial not to be granted.