[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED FEBRUARY 13, 1996
This is a forcible entry and detainer action brought pursuant to C.G.S § 47a-43. The plaintiff Statewide Parking Services, Inc. ("Statewide"), whose contract to manage the G. Fox parking garage expired on January 31, 1996, alleges that its employees CT Page 1365-HHHHH were forced to vacate the garage on February 1, under the threat of arrest by Hartford Police officers acting at the direction of the defendant City of Hartford officials. The essential facts giving rise to this dispute are not contested.
In 1991, the plaintiff Statewide Parking Services, Inc. ("Statewide") entered into a Management Agreement ("Agreement") with the May Department Stores Company to operate and manage the former G. Fox parking lot in downtown Hartford. At that time the May Company was the corporate owner of the G. Fox Company. Pursuant to the Agreement, Statewide was required to "operate manage and maintain [the] Garage as a first class parking facility . . ." The agreement set forth the hours of operation of the garage, subject to change by the owner, and required Statewide to perform certain maintenance and repair functions; to collect parking fees and transmit them to the owner: and to account for all fees and expenses.
Subsequent to the execution of the Agreement between the May Company and Statewide, the defendant City of Hartford acquired both the G. Fox building and the parking garage. As part of the transaction with May, the City was assigned May's rights under the Statewide agreement. As part of its ownership of properties in Hartford, including the G. Fox properties, the City retained the Koll Company to serve as its managing agent. Koll, in turn, hired the firm of DeMarco Miles Murphy to serve as the property manager of the G. Fox parking garage. Statewide reported principally to the Koll Company, but in certain matters pertaining to maintenance and repair, would deal directly with DeMarco Miles.
Consistent with its responsibilities under the Management Agreement, Statewide employs full- and part-time staff to operate the garage. It opens the garage every morning at 6:00 a.m. and customarily closes it at 11:00 p.m. It maintains an office on the first floor of the garage which houses its computer, copying and printing equipment. Complaints concerning damage to vehicles as well as maintenance problems are addressed, in the first instance, to Statewide. Under the Agreement Statewide has plenary responsibility for the day-to-day operations, including financial, of the garage, and consistent with its obligations, maintains a full-time presence on the property.
The Agreement, by its terms, expired on January 31, 1996. Prior to its expiration, the Koll Company, as agent for the City, CT Page 1365-IIIII advised Statewide that the Agreement would not be renewed and that it expected Statewide to "provide reasonable assistance in a management transition process." Upon being notified by Statewide that it would not vacate the facility, the City made plans to remove Statewide from the garage. On February 1, at approximately 6:00 a.m. officials from the City of Hartford, including uniformed members of the Hartford Police Department, confronted representatives of Statewide as they attempted to open the garage for business. The Statewide employees were told by the police to vacate the premises within ten minutes or face arrest. Statewide employees were also told that in the event that they attempted to lock themselves in their office, the door would be broken down and they would be forcibly removed. Approximately one hour later, the Statewide employees vacated the garage, removing the Company's equipment. This action followed, alleging a forcible entry and detainer in violation of General Statutes § 47a-43.
The dispositive issue in this case is whether the absence of a landlord-tenant relationship between Statewide and the City of Hartford precludes Statewide from claiming the protection of the entry and detainer statute. The defendants allege that because Statewide's right to access to the garage terminated when the Management Agreement expired, it does not possess any legal right to possession and therefore cannot invoke the protection of §47a-43. § 47a-43 provides, in relevant part, that "[w]hen any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same . . . the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."
Our Supreme Court has repeatedly stated that, "A plaintiff suing under the forcible entry and detainer statute must prove his actual possession of the land or property from which he claims to have been dispossessed." Communiter Break Co. v. Scinto,196 Conn. 390, 393 (1985) (emphasis in original). "The question of whether the plaintiff was in actual possession at the time of the defendant's entry is one for the trier of fact. Generally, the inquiry is whether the individual has exercised the dominion and control that owners of property usually exercise . . . It is not necessary that there be a continuous personal presence on the land by the person maintaining the action. There, however, must be exercised at least some actual physical control, with the intent and apparent purpose of asserting dominion." Id.
In this case, the evidence demonstrates that the plaintiff CT Page 1365-JJJJJ was in physical possession of the garage. It opened and closed the garage each day. Its staff collected fees, made repairs and maintained an office on the premises. With a few exceptions Statewide established the hours of operation. Statewide's letter to the defendant indicating that it would not relinquish control of the garage on January 31 reflected its intent to continue to exercise dominion and control over the property.
The question in this proceeding is not, as the defendants urge, whether the plaintiff has a legally cognizable possessory interest in the premises or any lawful claim to remain on the property. Indeed, there is nothing in the record before this court to even suggest that Statewide has any basis for such a claim. Rather, the only question before the court, is whether, as a matter of fact, the plaintiff is in possession of the premises. If it is, then it is entitled to invoke the protection of §47a-43. As our Supreme Court has often remarked, the entry and detainer statute protects even trespassers from forcible eviction. Section 47a-43 "was made to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means." Orentlicherman v. Matarese, 99 Conn. 122,126 (1923). "[T]he plaintiffs possession and the forcible entry or detainer are ordinarily the sole question at issue; it is necessary to prove only that the plaintiff was in actual and peaceable possession of the premises, and that the defendant forcibly entered and turned him out or dispossessed him by force after a peaceable entry. The title or ultimate right to possession of the premises is not involved and may not, apart from statutory authorization, be inquired into, and deeds or other testimony tending to prove a superior title or right to possession in the defendant are ordinarily not admissible."Forcible Entry and Detainer, 35 Am.Jur.2d 889, 895.
The defendants nevertheless insist that their resort to self help is justified, under the facts of this case, because of their conviction that the plaintiff's claim to continued possession is baseless. The defendants' evaluation of the plaintiffs right to possession, no matter how accurate, cannot serve as a basis for their unilateral decision to forcibly remove the plaintiff from the property. To hold otherwise would be to sanction the very danger that the entry and detainer statute was designed to protect against. Our Supreme Court has consistently emphasized that under the entry and detainer statute:
It [is] unlawful for a dispossessed owner to retake CT Page 1365-KKKKK possession of his land by force . . . The actual, peaceable possession of the plaintiff, however obtained, could not be put an end to without some process of law. This statute was made to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means. In an action of trespass for forcible entry, not brought on this statute, this court has said that it would be illogical to permit a defendant to set up such a defense. The dispossessed owner may not take the law into his own hands and by force eject a trespasser who is in actual peaceable possession.
 . . . There are several reasons why the law cannot suffer a forcible entry upon a peaceable possession, even though it be in the assertion of a valid title against a mere intruder. First. Whoever assumes to make such an entry makes himself judge in his own cause, and enforces his own judgment. Second. He does this by the employment of force against a peaceable party. Third. As the other party must have an equal right to judge his own cause, and to employ force in giving effect to his judgment, a breach of the public peace would be invited, and any wrong, if redressed at all, would be redressed at the cost of a public disturbance, and perhaps of serious bodily injury to the parties.
Orentlicherman v. Matarese, supra 126-27 (internal quotations and citations omitted).
Because the plaintiff has demonstrated that the defendants made a forcible entry[1] into the G. Fox garage and detained the same with a strong hand, a writ of restitution shall issue pursuant to General Statutes Sec. 47a-45a.[2] While the effect of this order will be to permit the plaintiff to maintain possession of the premises until lawfully evicted, it would be inequitable for the plaintiff to unjustly enrich itself, when under the circumstances of this case, it appears that there is no legal basis, under the terms of the Management Agreement, for it to continue its operation of the garage after January 31, 1996. Because the party who seeks equity must come before the court with "clean hands"; DeCecco v. Beach, 174 Conn. 29, 34 (1977); pursuant to the equitable powers of this court; Fellows v.Martin; 217 Conn. 57 (1991), it is a condition of this court's CT Page 1365-LLLLL order that the during the period it remains in possession of the garage, it shall comply with all of the provisions of the Management Agreement, including, but not limited to, the provisions of Sec. (k) setting forth the procedures for the handling and accounting of receipts, cash deposits, disbursements and daily reports. In addition, within two business days of this decision the plaintiff shall transmit to the City of Hartford all monies collected by Statewide from February 1 to the present and provide to the defendants a written accounting of all receipts and expenses for the same period.
HOLZBERG, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 1365-OOOOO